IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK EDWARD DONER,<br>                 Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY,<br>                 Defendant. | )<br>)<br>)  Civil Action No. 10-1613<br>)   Electronically Filed<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION**

**I.    Introduction**

Plaintiff, Mark Edward Doner ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act (the "Act"), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Act. 42 U.S.C. §§ 401-434, 1381-1383. The parties have submitted cross motions for summary judgment on the record developed at the administrative proceedings. For the following reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 7) will be denied, the Commissioner's Motion for Summary Judgment (Doc. No. 9) will be granted, and the administrative decision of the Commissioner will be affirmed.

**II.    Procedural History**

Doner protectively filed for disability benefits on August 22, 2007, alleging disability as of July 9, 2007. R. 117-128. The applications were denied by the state agency on November 18, 2007. R. 89-92. Doner responded on June 24, 2008, by filing a timely request for an administrative hearing. R. 98-100. On September 8, 2009, an administrative hearing was held in

Pittsburgh, Pennsylvania, before Administrative Law Judge ("ALJ") Alma S. Deleon. R. 16-41. Doner, who was represented by counsel, appeared and testified. R. 19-36. Frances Kinley, an impartial vocational expert ("VE"), also testified. R. 37-40.

In a decision dated September 23, 2009, the ALJ determined that Doner was not "disabled" within the meaning of the Act. R. 8-16. The Appeals Council denied Doner's request for review on October 8, 2010, thereby making the ALJ's decision the final decision of the Commissioner in this case. R. 1-3.

Doner commenced the present action on December 3, 2010, seeking judicial review of the Commissioner's decision. Doc. No. 1. Doner and the Commissioner filed cross-motions for summary judgment on March 28, 2011. Doc. Nos. 7 & 9. These motions are the subject of this memorandum opinion.

### III. Statement of the Case

In her decision, the ALJ made the following findings:

1. The claimant met the insured status requirements of the Act through December 31, 2012.

2. The claimant had not engaged in substantial gainful activity since July 9, 2007, the alleged onset date. 20 C.F.R. § 404.1571 *et seq.* and 416.971 *et seq.*

3. The claimant had the following severe impairments: hypertension and a seizure disorder. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to a full range of work at all exertional levels but with the following nonexertional limitations: the claimant cannot climb ladders, make complex decisions, follow detailed instructions or be exposed to heights or moving machinery.

6. The claimant is unable to perform any past relevant work. (20 C.F.R. §§ 404.1565 and 416.965).

7. The claimant was born on July 23, 1960, and was 46 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date. (20 C.F.R. §§ 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English. (20 C.F.R. §§ 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled", whether or not the claimant has transferable job skills. (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 C.F.R. 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 9, 2007, through the date of this decision. (20 C.F.R. § 404.1520(g) and 416.920(g)). R. 10-15.

## VI. Standard of Review

This Court's review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191(3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience,

engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions, he or she must make specific findings of fact. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rule making authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court has summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."[20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. It is on this standard that the Court has reviewed the parties' cross-motions for summary judgment.

**IV. Discussion**

In support of his Motion for Summary Judgment, Doner alleges that the ALJ made the following errors which necessitate remand: (1) the ALJ failed to properly credit his testimony regarding his symptoms which resulted in adoption of an inaccurate residual functional capacity assessment; (2) the ALJ failed to properly develop the record regarding his mental impairments; and (3) because the hypothetical question posed to the vocational expert did not accurately reflect his impairments, it cannot serve as substantial evidence. Doc. No. 8. The Commissioner contends that Doner did not meet his burden of establishing that he was disabled under the Act and that the ALJ's decision is supported by substantial evidence. Doc. No. 10

### A. The ALJ Properly Addressed Doner's Testimony and Reasons for Discounting Said Testimony

Doner contends that the ALJ's decision-making process regarding the credibility of his testimony is "ambiguous and fails to inform this Court as to whether the decision was based on substantial evidence." Doc. No. 8, 3.

To be eligible for benefits, Doner, as claimant, has the burden of establishing a medically determinable impairment, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months, that is so severe that it prevents him from engaging in any substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d) (2)(A); 20 C.F.R. §§ 404.1505, 416.905; *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983). In deciding whether a claimant has met this burden, the ALJ must consider all the evidence of record, including the claimant's testimony and if discredited, provide reasons for discounting such testimony. *See Akers v. Callahan*, 997 F.Supp. 648, 658 (W.D. Pa. 1998).

When asked to describe the functional limitations that result from his seizure disorder and his medication's side effects, Doner testified that he has memory loss and "I'm run down all the time, I have to sleep, I have to lay down and take a nap in the afternoon and evening." R. 21. In this case, no medical evidence exists to support these limitations being adopted by the ALJ.[1] In her decision, the ALJ specifically noted that "there is no evidence that the claimant requires naps two hours a day and cannot focus due to side effects from his medication." R. 14.[2] Although

---

[1] The ALJ also thoroughly discussed why Doner's seizure disorder was not credible in terms of persistence, intensity and limiting effects in light of the lack of medical evidence of record and his own testimony that he has not had a seizure since 2008 and that the seizures are well controlled. See R. 12-13.

[2] Doner also contends that the ALJ should have considered his long work history. Doc. No. 8, 4. Although a long work history may support a claimant's credibility, it is not required that the ALJ

Doner argues that the ALJ erred in never explaining "which of [his] statements regarding his subjective symptoms she rejected," the ALJ's reliance on the lack of objective medical support for Doner's alleged functional limitations gives this Court sufficient support to find that the ALJ's rejection of his testimony was supported by substantial evidence. [3]

### B. *There is No Evidence that the Record Was Not Fully Developed*

Doner also alleges that the ALJ failed to fully develop the record regarding his mental impairments by impeding his efforts to provide testimony and by failing to request a consultative examination by a psychologist. Doc. No. 8. As to the ALJ's development of the record through Doner's testimony, the Court finds that a review of the transcript shows that the ALJ adequately questioned Doner in regards to his functional limitations, both mental and physical. R. 19-36. Furthermore, Doner was represented by counsel at the hearing and counsel was given adequate opportunity to question Doner after the ALJ's questions. R. 34-36.

Doner also contends that the ALJ should have requested a consultative examination. Doc. No. 8, 7. However, under 20 C.F.R. § 404.1519(a), the ALJ was not required to, nor did a

---

discuss such history. *See Dobrowosky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979); *Morealli v. Astrue*, 2010 WL 654396 at * 7 (W.D.Pa. 2010).

[3] Doner's reliance on the side effect information for his seizure medication, Carbamazepine, which warns that "this medicine may cause drowsiness, dizziness, or blurred vision", is misplaced. Doc. No. 8, 4. Doner had the burden of establishing a functional limitation that would be expected to last at least one year. Although he testified that his doctors informed him that he should continue to take the medication to prevent future seizures, there is no evidence that all such medicines would cause such side effects or that the side effects would be expected to continue after he ceased taking the medication. As such, Doner did not meet his burden of demonstrating that his fatigue, dizziness, loss of memory and focus, are so severe that they would prevent his from engaging in any substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d) (2)(A); 20 C.F.R. §§ 404.1505, 416.905. Furthermore, despite not finding Doner's testimony to be credible, the ALJ adopted many of his alleged impairments in Doner's residual functional capacity assessment. R. 13.

situation exist in which a consultative examination should have been ordered.[4] Doner alleged disability due to a seizure disorder, which had been controlled for at least a year and a half. R. 89. His medical record does not include evidence of mental health impairments or resulting mental functional limitations.[5] Therefore, there was no requirement that the ALJ order a consultative mental examination. 20 C.F.R. § 404.1519.

---

[4] *See* 20 C.F.R. § 404.1519(a) which provides in pertinent part as follows:
(b) *Situations requiring a consultative examination.* A consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim. Other situations, including but not limited to the situations listed below, will normally require a consultative examination:
(1) The additional evidence needed is not contained in the records of your medical sources;
(2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, such as death or noncooperation of a medical source;
(3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;
(4) A conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved, and we are unable to do so by re-contacting your medical source; or
(5) There is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established.

[5] Although Doner argues that a consultative mental examination was required because the Psychiatric Review Technique completed by John Rohar, Ph.D., indicated that he suffered from an organic mental disorder, review of Dr. Rohar's findings reveal that the organic mental disorder identified in "seizure disorder." R. 175. Furthermore, Dr. Rohar opined that Doner had only mild restrictions of activities of daily living, mild difficulties maintaining social functioning, and mild difficulties in maintaining concentration, persistence, and pace. R. 184. Dr. Rohar concluded that Doner's seizure disorder was "non-severe." R. 174-86. Such findings do not support Doner's contention that a consultative examination should have been ordered. Furthermore, Doner's testimony as to concentration issues and memory loss were incorporated into his residual functional capacity assessment. R. 13.

### C. The Hypothetical Question Posed to the Vocational Expert Included all of the Functional Limitations Which Were Supported by the Record

Doner argues that the hypothetical question the ALJ posed to the vocational expert did not encompass all of his functional limitations. Doc. No. 8, 9. The ALJ's hypothetical question to the vocational expert is as follows:

> Assume that I find the claimant is 49 years old and has a 12th grade education, assume further that I find he can perform any exertional level of work, but he [is] further limited by the following. The first one would be to climb ladders, second to make complex decisions, the third one, to follow detailed instructions, the fourth one, to be exposed to heights, and the fifth one, to be exposed to moving machinery. With these limitations could this individual perform his past relevant work or any other job in the national economy?

R. 38.

Doner contends that the hypothetical question is based upon an inappropriate exertional level and failed to include his chronic fatigue and difficulty with concentration and focus. Doc. No. 8, 9.

Where a hypothetical question to the VE accurately sets forth all of a claimant's significant impairments and restrictions in activities, physical and mental, as found by the ALJ or as uncontradicted on the medical record, the expert's response as to the existence of jobs in the national economy which the claimant is capable of performing may be considered substantial evidence in support of the ALJ's findings on claimant's RFC. *See, e.g., Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir.2002), citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984) and *Chrupcala v. Heckler*, 829 F.2d, 1276 (3d Cir.1987) (leading cases on the use of hypothetical questions to VEs). [6] Objections to the adequacy of an ALJ's hypothetical questions to a

---

[6] Conversely, because the hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments," *Chrupcala*, 829 F.2d at 1276, where there exists on the record "medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." *Podedworny*, 745 F.2d at 218.

vocational expert "often boil down to attacks on the RFC assessment itself." *Rutherford v. Barnhart*, 399 F.3d 546, 554 n. 8 (3d Cir. 2005).

The Court finds that the ALJ adequately accounted for any alleged difficulties with focus and concentration by limiting Doner to work not involving complex decisions or detailed instructions. R. 13. Although Doner's attorney at the hearing asked the vocational expert about a hypothetical person would not be able to complete tasks twenty minutes out of every hour, there is no medical evidence to support such limitations being included in the hypothetical question to the vocational expert. The ALJ also noted that there is no supporting evidence that Doner would need to regularly take two hour naps in the middle of the workday to support his allegations of extreme fatigue. R. 14.

Similarly, the ALJ was not required to accept that Doner would be limited to occupations at the light exertional level as indicated in State Agency examiner Benton's November 21, 2008, Physical Residual Functional Capacity Assessment. R. 167-172. There is no independent medical evidence of Doner having limitations in his capacity to lift and carry etc. In fact, his alleged symptomology in this respect stems from his seizure disorder, which he testified has been without incident since 2008. R. 23.

The ALJ noted that State Agency examiner Benton indicated that Doner's alleged disability was due to brain seizures which result in limitations in standing, lifting, carrying, etc. R. 13. Benton noted that Doner suffered from a seizure related to alcohol withdrawal on July 7, 2007, at which time he started on Dilatin. R. 13. The ALJ discussed that since that time Doner reported good control of his seizures and is able to participate in daily activities, such as caring for his personal needs and performing routine household activities. Id. Notably, the ALJ supported his decision by discussing that "the record shows that the claimant has been

prescribed, and has taken; appropriate medications for the alleged impairments and the medical records reveal that the medications have been relatively effective in controlling his symptoms." Id. The Court notes that the ALJ wrote his opinion finding that Doner was not disabled within the meaning of the Act, more than two years after Doner had last suffered a seizure. R. 15. In short, there is no medical evidence that Doner should have been restricted to light exertional levels. The ALJ adequately addressed State Agency Examiner Benton's report and was not required to accept her conclusion that Doner could not complete work at all exertional levels.

Therefore, the ALJ's hypothetical question posed to the vocational expert included only those limitations the ALJ found were supported by the record and which were evidence by the record and as such, the vocational expert's identification of occupations which such a hypothetical person would be capable of performing is substantial evidence to support the ALJ's determination that Doner is not disabled under the Act. *Podedworny*, 745 F.2d at 218.

V. **Conclusion**

For the foregoing reasons, the Court finds that the ALJ's decision is supported by substantial evidence. Therefore, the Commissioner's administrative decision will be affirmed. An appropriate order follows.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc: All Registered ECF Counsel and Parties